

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| WILFORD VOGT, <br> JAMES P. GAUTHIER, and <br> HUMBERTO REYNA, JR., <br> for themselves and all others <br> similarly-situated, <br><br> Plaintiffs, <br><br> v. <br><br> TEXAS INSTRUMENTS <br> INCORPORATED, <br><br> Defendant. | § § § § § § § § § § § § § § § § § | Civil File No. 3-05-CV-2244-L <br><br> [Wage/Hour – Fair Labor <br> Standards Act] <br> [Collective Action] <br> [Jury Demanded] |

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR ENTRY OF
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Plaintiffs WILFORD VOGT, JAMES P. GAUTHIER, and HUMBERTO REYNA, JR., on behalf of themselves and all others similarly-situated (collectively "Plaintiffs"), file this Response to Defendant's Motion for Entry of Temporary Restraining Order and Preliminary Injunction and, in support thereof, would respectfully show the Court as follows:

### I. ARGUMENT & AUTHORITIES

A.  **A Temporary Restraining Order And Preliminary Injunction Are Neither Warranted Nor Needed.**

Since the United States Supreme Court's decision in *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101 S.Ct. 2193 (1981), courts have tended to view requests for orders prohibiting contact with potential class members with skepticism in light of possible First Amendment concerns. On the other hand, because of the potential for abuse presented by class action litigation, a district court has

both the duty and the broad authority to manage collective actions and to enter appropriate orders governing the conduct of counsel and parties. *Id.* at 100. Faced with these competing interests, courts will restrict communications between parties and potential class members only where there is a "clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Id.* at 101. The first step in this process is to determine the need for any limitation. *Belt v. Emcare, Inc.*, 299 F. Supp. 2d 664, 668 (E.D. Tex. 2003). Only when such a need presents itself, based on a "clear record and specific findings," will a court proceed to the secondary consideration of the "narrowest possible relief which would protect the respective parties." *Gulf Oil Co.*, 452 U.S. at 102.

Courts considering whether to limit communications with potential class members have found good cause where a party's *ex parte* communications were misleading, coercive, or improper attempts to undermine the collective action. *Kleiner v. First Natl. Bank of Atlanta*, 751 F.2d 1193, 1206 (11th Cir. 1985); *Belt*, 299 F. Supp. 2d at 667; *Hampton Hardware, Inc. v. Cotter & Co., Inc.*, 156 F.RD. 630, 632-33 (N.D. Tex. 1994). Where these conditions do not exist, the balance tilts in favor of a party's First Amendment rights, *see Lee v. Am. Airlines, Inc.*, No. Civ. A. 3:01-CV-1179-P, 2002 WL 226347 at *3 (N.D. Texas Feb. 12, 2002)(Solis, J.), and a court should be wary of needlessly restricting protected activity.[1] *See Gulf Oil Co.*, 452 U.S. at 101. Because counsel's contact with potential class members was carefully drafted to comply with Texas ethical rules and modeled on a notice previously approved by this Court, the need for court-ordered limitations does not present itself. The notices are truthful, straightforward, and clearly are meant to *promote* the

---

[1] In *Zauderer v. Off. of Disc. Counsel of the Sup. Ct. of Ohio*, 471 U.S. 626, 637, 105 S.Ct. 2265, 2275 (1985), the Supreme Court recognized that truthful and non-deceptive advertising by attorneys falls squarely within the category of "commercial speech" protected by the First Amendment. Such advertising that is not false, deceptive, or misleading, or that does not propose unlawful activities, may be restricted only in the service of substantial government interests and only through means that directly advance that interest. *Id.* at 638.

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR ENTRY OF TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**     **Page 2**

purpose of the collective action, rather than undermine it. The Court therefore should not be concerned by them and should refrain from placing a blanket limitation on Plaintiffs' ability to contact potential class members, as Defendant urges.

1. ***Plaintiffs' Earlier Communications Were Isolated, Limited, and Have Not Been Repeated.***

Defendant alleges that Plaintiffs have sent out numerous "harassing," "biased," and "misleading" *ex parte* communications and solicitations to TI employees. (Def. Mot. at 3, 5, 7). Defendant cites three instances to support this allegation. *Id.* The first two instances involved named Plaintiff Wilford Vogt and opt-in Plaintiff Angela Loggins, both former employees of Defendant.[2] Without reiterating the arguments Plaintiffs set out fully in their reply brief in support of their motion to facilitate §216(b) notice, Vogt's letter and Loggins' e-mail were communications between former co-workers, in which one lay person shared his or her opinion with respect to the lawsuit. Whatever their substance, they occurred more than three (3) months ago, have not been repeated, and could conceivably have had only a negligibly prejudicial effect. For those reasons, Defendant focused the greater part of its brief on the third allegedly improper communication – Plaintiffs' counsel's mailing of an advertisement to a limited number of Defendant's employees.

2. ***Counsel's Communications Are Truthful, Straight-forward, and Supportive of the Collective Action.***

Counsel's mailed notice violates none of the standards that necessitate court intervention. *See Belt*, 299 F. Supp. 2d at 667 (finding the need for intervention where the communications were "misleading, coercive, or an improper attempt" to undermine the collective action); *Hampton Hardware, Inc.*, 156 F.R.D. at 632 (same). The notice is truthful, straightforward, and generally

---

[2] Defendant also cites these two instances in its Response in Opposition to Plaintiffs' Motion to Facilitate § 216(b) Notice. (Def. Resp. at 20). Plaintiffs have already addressed Defendant's arguments with respect to these so-called "deceptive" communications in their Reply brief. (Pl. Reply at 8).

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR ENTRY OF TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**          Page 3

outlines the applicable legal and factual issues in clear, understandable language. Indeed, though he was not obligated to do so, counsel received approval of the notice from the State Bar's Advertising Review Committee on February 14, 2006, *prior* to mailing any of the notices.[3] Moreover, the notice is modeled on the one approved by this Court in *Solis, et al., v. Hotels.com Tex., Inc., et al.*, No. Civ. A. 3:03 CV 00618 (N.D. Tex.), filed Mar. 19, 2004 (J. Lindsay), another FLSA collective action. While the facts of that case may differ somewhat in their particulars from this one, the basic form and structure of the notice from that case should be satisfactory in the present one. Finally, Defendant does not – nor could it – claim that counsel's notice was intended to undermine the purpose of this collective action; the contrary is obviously the case. Counsel intended to promote the collective action by making absent class members aware of the lawsuit and informing them of how they might pursue their FLSA rights. There is no cause, therefore, for a blanket restriction on Plaintiffs' contacts with absent class members based on this earlier mailing. *See Burrell v. Crown Central Petroleum, Inc.*, 176 F.R.D. 239 (E.D. Tex. 1997)(refraining from placing limitations on defendant's communication with putative class members where plaintiffs failed to make sufficient evidentiary showing of coercion, misleading statements, or efforts to undermine the class action).

    3. **Belt*'s Holding Counsels Against the Issuance of a Temporary Restraining Order and Preliminary Injunction.*

Defendant is correct to draw the Court's attention to the *Belt* case for guidance in resolving the question at hand. While it is true that the *Belt* court enjoined future *ex parte* communications with potential class members, 299 F. Supp. 2d at 669, a careful reading of the court's opinion weighs against similar measures here. In *Belt*, the court found that a letter sent by the defendant to absent potential class members was misleading, coercive, and intended to undermine the purposes of the

---

[3] A copy of the Committee's approval is included as Exhibit A to the Declaration of David Watsky. (Pl. App. at 5-6.) In order to assuage the Advertising Review Committee's concerns, counsel made several changes to his original proposed notice and inserted language suggested by Committee staff. The version of the notice approved by the Committee was the third proposed draft.

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR ENTRY OF TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**                                                   Page 4

collective action by encouraging absent class members not to join.[4] *Id.* at 668-69. In other words, the *ex parte* communications in *Belt* violated all three independent standards for restricting such contacts. *Id.*

None of the egregious conduct or inflammatory statements in *Belt* are evident here. Rather than mischaracterizing the litigation's goals or preying upon employees' concerns over job security, counsel's notice accurately sets out the issues of law and fact involved in this case. It seeks to inform employees of Defendant who may be eligible to join the class, rather than to scare them off. Counsel's communications simply are not of the kind or degree that motivated the court's injunction in *Belt*, or in any of the cases where the balance tilted in favor of curtailing a party's speech in order to preserve the integrity of the class process. *See, e.g., Kleiner*, 751 F.2d 1193; *Recinos-Recinos v. Express Forestry, Inc.*, 2006 WL 197030 (E.D. La. Jan. 24, 2006)(Knowles, Mag. J.); *Belt*, 299 F. Supp. 2d 664; *Hampton Hardware, Inc.*, 156 F.R.D. 630. *Cf. Gulf Oil Co.*, 452 U.S. 89; *Burrell*, 176 F.R.D. at 245.

The court in *Belt* also had cause for concern because of the timing of the defendant's communication. The defendant sent its letter the day before it was to turn over to the plaintiff a list of the potential class members' mailing addresses. Significantly, the contact took place *after* the court had conditionally certified the class and established the procedure for court-supervised notice.

---

[4] Defendant EmCare's letters were misleading because, among other reasons, they mischaracterized the lawsuit as an attack on the absent class members' status as "professionals." *Belt*, 299 F. Supp. 2d 668. Plaintiffs claimed that the defendant wrongly characterized Nurses Assistants (NAs) and Physicians Assistants (PAs) as exempt from the FLSA's coverage. Plaintiffs' contention was that these hourly employees did not fit under the FLSA's professional exemption and, consequently, were required to receive overtime in accordance with the FLSA. EmCare's letter suggested that lawsuit impugned the professionalism and work-place contribution of these employees. *Id.* at 666-67. The letter was coercive because it was sent by an employer to its employees. *Id.* The court held that, inherent in an on-going business relationship, such as that between an employer and employee, is the opportunity for coercion. *Id.* Finally, the court found that EmCare's letter was meant to undermine the collective action because it sought to discourage potential plaintiffs from joining the suit. It did so by intentionally misrepresenting the damages available to class members and by preying upon the absent class members' concerns about the effect of the lawsuit on the company (and, thus, their future employment) when it declared, "[I]t is unclear how the Court's rulings may impact clinical operations on a going forward basis." *Id.* at 667, 669.

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR ENTRY OF TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**          Page 5

The timing of the letter left the court with little choice but to conclude that the defendant meant to subvert the court's carefully crafted notice and its role in administering the collective actions by securing for itself first crack at the potential plaintiffs. *Belt*, 299 F. Supp. 2d at 669. This concern over defendants' attempts to discourage class membership in disregard of a court's administration of an already-certified class is a common one. *See, e.g., Kleiner*, 751 F.2d at 1206-07 (affirming the imposition of sanctions against defendant and its counsel for soliciting exclusion requests from potential class members in violation of the court's protective order barring any communication regarding the litigation). This is not a concern here, where the Court has not issued any orders concerning the notice procedure, where Plaintiffs are not attempting to discourage class membership, and where counsel is not acting in the face of any court-imposed restriction.

### B. Plaintiffs' Communications Do Not Obviate the Need for Court-Supervised Notice.

Defendant next charges that Plaintiffs are attempting to circumvent – in Defendant's words, to make an "end run" around – the notice process, and that this conduct obviates the need for any further class notice. (Def. Mot. at 1-2). Nothing could be further from the truth. Plaintiffs' efforts at bringing awareness of rights under the Fair Labor Standards Act ("FLSA") and the means of vindicating those rights to a group of individuals potentially victimized by Defendant's policies is hardly the underhanded act Defendant's brief suggests. Because the FLSA's statute of limitations generally is not tolled for any individual class member until that individual has filed with the Court a written consent to join, 29 C.F.R. §790.21(b)(2); *see also Grayson v. K Mart Corp.*, 79 F.3d 1086, 1105-06 (11th Cir.), *cert. denied*, 519 U.S. 982 (1996), there is the need for expedition in this type of case to prevent the wasting away of potential plaintiffs' claims. Counsel in no way meant to impinge on the Court's authority to manage the class following certification, but rather intended to

inform potential plaintiffs of their rights in a timely manner so that they might pursue them while still able to do so.

More to the point, in so far as counsel's communications were neither false nor deceptive (addressed *supra*), counsel was merely participating in protected speech that in no way challenges the Court's authority. *See Zauderer v. Off. of Disc. Counsel of the Sup. Ct. of Ohio*, 471 U.S. 626, 638, 105 S.Ct. 2265, 2275 (1985)(holding that attorney advertisements are protected commercial speech, so long as they are not false or deceptive and do not propose unlawful activities). Out of regard for his ethical obligations, counsel sought, and eventually received on March 14, 2006, pre-approval from the State Bar of Texas's Advertising Review Committee of the notice he desired to send.[5] He took the additional step of modeling the notice on the one approved by this Court in *Solis*, *supra*, another FLSA collective action. Counsel's actions were not those of one who is thumbing his nose at the Court; to the contrary, he carefully couched the exercise of constitutionally-protected rights within the boundaries of Texas's ethical rules and the Court's own past rulings.

Counsel's pre-approved, carefully-drafted letter to potential plaintiffs does not interfere with, much less preempt, this Court's role in any notice procedure that may follow, as Defendant claims. (Def. Mot. at 5). Defendant cites no precedent to support the notion that counsel for a potential class of FLSA plaintiffs is barred from notifying potential plaintiffs of the lawsuit while the court considers whether to conditionally certify the class. This type of blanket restriction would seem to conflict with both the FLSA's policy objectives, *see* 29 U.S.C. 202, and the particular attorney's First Amendment rights. *See Zauderer*, 471 U.S. at 638.

---

[5] Comment 4 to Rule 7.07 notes that submission to the pre-approval procedure is "purely optional," and is made available to those lawyers who wish to "resolve any possible doubts about their proposed advertisements' or solicitations' compliance" with the Rules of Professional Conduct prior to publication or issuance. TEX. DISCIPLINARY R. PROF'L CONDUCT 7.07 & cmt, *reprinted in* TEX. GOV'T CODE ANN., title 2, subtit. G app. A (Vernon Supp. 1997) (TEX. STATE BAR R. art. X, § 9)(Emphasis added.)

Moreover, Counsel's efforts thus far to notify potential plaintiffs in no way can be said to substitute for the comprehensive and efficient notice a court is able to undertake. Counsel, given the limited information available to him, has been able to address a notice to approximately 295 current or former employees of Defendant[6]; of that number, 129 such mailings came back as undelivered/return to sender. Placed in the context of the overall size of the potential class[7], Counsel's efforts represent a mere drop in the bucket and are wholly inadequate to reach a critical mass of plaintiffs. These efforts fall well short of what is needed effectively to provide notice of the lawsuit and thus do not obviate the need for the Court's continued involvement in the process.

### C. Plaintiffs' Information is Neither Proprietary Nor Confidential.

Defendant lastly argues that Plaintiffs' counsel has misused TI's confidential and proprietary information by utilizing employee rosters provided to counsel by several plaintiffs. (Def. Mot. at 6). While Defendant is arguably on sound footing when it contends that employee rosters obtained from Defendant would be confidential and proprietary, (Def. Mot. at 4), that contention is of little import here. The lists were generated over a several-year-period by plaintiffs Wilford Vogt and Robert Flatt as part of a union organizing campaign. (Pl. Appx. at 1, 3). The process of developing these lists began with the individual organizers' personal connections and gradually extended as face-to-face contacts broadened the scope of the organizers' information. (*Id.* at 1-2, 3-4). When an individual employee did not personally give his/her address and contact information, the organizers utilized publicly-available sources to obtain this information. (*Id.* at 2, 4). The

---

[6] Plaintiffs' counsel had the most complete information for DFAB and was able to send a mailing to 260 DFAB employees. Other than DFAB, the only TI fab from which workers received a notice mailing was DMOS-5. TI's Dallas campus alone is home to at least six (6) fabs.

[7] Defendant's estimate of the potential class is 5,000 employees. (Def. Resp. to Pl. Mot. for § 216(b) Notice at 1).

information therefore is neither proprietary nor confidential, and Defendant cannot lay claim to it merely by citing to its internal policy. Nor is its use, as Defendant suggests, (Def. Mot. 6), an invasion of the privacy rights of the individuals on the lists. Plaintiffs' information stems from the plaintiffs' personal knowledge and from publicly available sources. Significantly, Plaintiffs' counsel has not sent any notices to TI employees through their TI employee e-mail accounts or business addresses.

## II. CONCLUSION

For the foregoing reasons, the Court should deny Defendant's motion and refrain from granting a temporary restraining order and preliminary injunction barring Plaintiffs from sending the approved advertisement to current or former employees of Defendant and requiring Plaintiffs to return to Defendant any copies of the lists they compiled through their own knowledge, contact, and efforts.

Respectfully submitted,

GILLESPIE, ROZEN, WATSKY, MOTLEY & JONES, P.C.
3402 Oak Grove Avenue, Suite 200
Dallas, Texas 75204
Phone: (214) 720-2009
Fax:     (214) 720-2291

By: /s/ David Watsky
David K. Watsky
State Bar No. 20932600
Hal K. Gillespie
State Bar No. 07925500
James D. Sanford
State Bar No. 24051289

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing was forwarded on this 17th day of May, 2006, in the following manner to:

Stephen E. Fox
FISH & RICHARDSON P.C.
Suite 5000
1717 Main Street
Dallas, Texas 75201

_____ Hand Delivery
___✓___ U.S. Mail, postage pre-paid
_____ Certified Mail, Return Receipt Requested
_____ Overnight Express Mail/Federal Express
___✓___ Telecopier

_____
David K. Watsky