IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| WILFORD VOGT,<br>JAMES P. GAUTHIER, and<br>HUMBERTO REYNA, JR.,<br>for themselves and all others<br>similarly-situated, | §<br>§<br>§<br>§<br>§<br>§ | |
| Plaintiffs, | §<br>§ | |
| v. | § | Civil Action No. 3:05-CV-2244-L |
| | § | |
| TEXAS INSTRUMENTS<br>INCORPORATED, | §<br>§ | |
| Defendant. | §<br>§ | |

## MEMORANDUM OPINION AND ORDER AND PRELIMINARY INJUNCTION

Before the court is Defendant's Motion for Entry of Temporary Restraining Order and Preliminary Injunction (the "Application"), filed by Defendant Texas Instruments Incorporated ("Defendant" or "TI"), with notice, on May 15, 2006.  On May 18, 2006, the court conducted a hearing concerning TI's Application.  Upon careful consideration of Defendant's Application, Plaintiffs' Response, the record, and applicable law, the court **grants in part** and **denies in part** Defendant's Application for Entry of Temporary Restraining Order and Preliminary Injunction.

## I.    Procedural and Factual Background

This case is a wage and hour collective action brought pursuant to 29 U.S.C. § 216(b) of the Fair Labor Standards Act ("FLSA"), asserted by a proposed class of certain current and former TI employees to recover alleged unpaid overtime wages.  Plaintiffs filed their Complaint on November 15, 2005, and their First Amended Complaint on November 22, 2005.  On February 13, 2006, Plaintiffs filed a Motion to Facilitate § 216(b) Notice ("Motion to Facilitate"), requesting the court

to conditionally certify a collective action "on behalf of certain non-exempt employees of TI who were employed as Manufacturing Specialists or Equipment Engineering Technicians . . . from November 15, 2002 to the present," and to permit Plaintiffs to send a court-authorized notice to the potential class members pursuant to section 216(b).  Pls' Mot. to Facilitate at 2.  TI filed its Response on April 7, 2006, contending that Plaintiffs' proposed putative class contained members who were not similarly situated to the named plaintiffs for purposes of section 216(b).  TI attached its own proposed notice to its Response, which contained proposed revisions to Plaintiffs' notice and narrowed the group of proposed recipients.  Plaintiffs filed their Reply on May 9, 2006.  On May 15, 2006, pursuant to 28 U.S.C. § 636(b), the court referred Plaintiffs' Motion to Facilitate to United States Magistrate Judge Irma C. Ramirez for hearing, if necessary, and for determination.  Because conditional certification has not yet occurred, the composition of a possible putative class and the contents of a possible court-authorized notice remain undetermined.

TI contends that Plaintiffs and their counsel have intentionally circumvented the established court-supervised procedures for issuing a fair, accurate, and neutral opt-in notice by sending *ex parte* communications to certain current and former TI employees aimed at preempting TI's input, and ultimately, the court's authority, regarding the content of the section 216(b) notice and the people who should receive it.  TI's Application centers upon three communications: (1) a flyer contained in a letter sent by named Plaintiff Wilford Vogt to a current TI employee on February 15, 2006; (2) an e-mail sent by Angela Loggins, an opt-in Plaintiff, to eleven other persons, presumably current or former TI employees, on February 10, 2006; and (3) an "advertisement" sent by Plaintiffs' counsel on May 1, 2006, to the home addresses of certain current and former TI employees.

TI contends that the above-described communications, particularly the May 1, 2006 "advertisement," were misleading and coercive pieces of correspondence that undermined the

collective action process.  It requests the court to issue a temporary restraining order enjoining

Plaintiffs and their attorneys and other agents from committing the following conduct:

- sending the May 1, 2006 "advertisement" to any other past or present TI employees;
- sending any other *ex parte* communications to past or present TI employees (other than those that have already opted-in) regarding this lawsuit that are not authorized or approved by this court, including letters, flyers, posters, cards, e-mails, or other written communications either sent directly to the recipients or posted anywhere on TI property.[1]

Def's Mot. for TRO and Prelim. Inj. at 2-3.  In addition, TI requests the court to enter an order

requiring Plaintiffs to:

- provide TI a list of the individuals to whom Plaintiffs' counsel sent the May 1, 2006 "advertisement," as well as any contact information Plaintiffs or their counsel possess for those individuals; and
- return to TI the original, all hard copies, and any disks containing any employee roster or other list identifying TI employees and any of their contact information, as well as destroy all other electronic or digital copies.[2]

*Id*. at 3.  TI requests the court to grant a temporary restraining order and then issue a preliminary

injunction enjoining the described conduct through trial.[3]  It does not seek the court to restrain

communication initiated by a current or former TI employee to the law firm of Plaintiffs' counsel,

nor does it seek action from the court to rectify the effect of communications previously made.

---

[1]TI does not seek the court to enjoin Plaintiffs from orally communicating with prospective class members about the lawsuit, but does seek such oral prohibition against Plaintiffs' counsel.

[2]TI contends that Plaintiffs' counsel obtained contact information from TI employee rosters that are confidential and proprietary information.  Named Plaintiff Wilford Vogt and opt-in Plaintiff Robert Flatt aver that the advertisement was mailed using contact lists that they compiled as part of an unrelated union organizing campaign.  *See* App. in Supp. of Pl's Resp. to Def's Mot. for Entry of TRO and Prelim. Inj. ("Pl's App.") 1-4.  TI does not request Plaintiffs to turn over the rosters they personally compiled, but does request Plaintiffs to turn over any rosters that are the property of TI, and to destroy any remaining hard or electronic copies.

[3]Although TI filed its Application seeking entry of a temporary restraining order, and subsequently a preliminary injunction, the court treats the Application as an application for preliminary injunction.  As the parties have been fully heard and the issues fully briefed, no purpose would be served or furthered by the issuance of a temporary restraining order.

**Memorandum Opinion and Order and Preliminary Injunction - Page 3**

## II.   **Applicable Law**

TI's Application is not a typical application for a preliminary injunction.  TI seeks an interim order restraining Plaintiffs and Plaintiffs' counsel from making unauthorized *ex parte* communications to potential members of the collective action class, and therefore essentially requests the court to issue an order limiting the speech of Plaintiffs and Plaintiffs' counsel with absent class members.[4]

Section 216(b) of the FLSA expressly authorizes employees to bring a collective action on "behalf of . . . themselves and other employees similarly situated."  29 U.S.C. § 216(b).  An FLSA collective action functions similarly to a class action brought under Fed. R. Civ. P. 23.  A "critical difference" between a section 216(b) collective action and a Rule 23 class action "is that the former requires each class member to opt in as a party plaintiff, but the latter (Rule 23 class action) includes all absent class members who do not affirmatively opt out."  *Baldridge v. SBC Commc'ns, Inc.*, 404 F.3d 930, 933 n.6 (5th Cir. 2005).

Courts have the authority, pursuant to section 216(b), "to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure."  *Hoffmann-La Roche Inc. v.*

---

[4]Both parties advise the court to analyze Defendant's Application under the framework used in *Belt v. EmCare Inc.*, 299 F.Supp.2d 664 (E.D. Tex. 2003).  Because Defendant's presented their Application as a request for injunctive relief, the court will address Defendant's Application using the *Belt* analysis as well as the traditional framework for analyzing applications preliminary injunction.

There are four prerequisites for the extraordinary relief of a temporary restraining order or preliminary injunction.  To prevail, Plaintiff must demonstrate: (i) a substantial likelihood of success on the merits; (ii) a substantial threat of immediate and irreparable harm for which it has no adequate remedy at law; (iii) that greater injury will result from denying the temporary restraining order than from its being granted; and (iv) that a temporary restraining order will not disserve the public interest.  *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987); *Canal Auth. of State of Fla. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974) (*en banc*).  The party seeking such relief must satisfy a cumulative burden of proving each of the four elements enumerated before a temporary restraining order or preliminary injunction can be granted.  *Mississippi Power and Light Co. v. United Gas Pipeline,* 760 F.2d 618, 621 (5th Cir. 1985); *Clark*, 812 F.2d at 993.  Otherwise stated, if a party fails to meet *any* of the four requirements, the court cannot grant the temporary restraining order or preliminary injunction.

*Sperling*, 493 U.S. 165, 170 (1989) (citing Fed. R. Civ. P. 83); *see also Belt v. EmCare Inc*., 299

F.Supp.2d 664, 667 (E.D. Tex. 2003). As district courts have "both the duty and the broad authority

to exercise control . . . and to enter appropriate orders governing the conduct of counsel and parties"

in Rule 23 class actions, *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981), they possess this same

duty and broad authority in managing section 216(b) collective actions, since a similar potential for

abuse exists. *Hoffmann-La Roche Inc*., 493 U.S. at 171. Such managerial responsibility begins once

the collective action is filed, before the court conditionally certifies the class or authorizes a section

216(b) notice. *See id*. at 170-71.

A court may not limit communications "without a specific record showing by the moving

party of the particular abuses by which it is threatened." *Gulf Oil Co*., 452 U.S. at 102 (Rule 23

context). The "mere possibility of abuses" does not justify routine adoption of a communications

ban. *Id*. at 104; *Lee v. American Airlines*, 3:01-CV-1179-P, 2002 WL 226347, at *2 (N.D. Tex. Feb.

12, 2002) (Rule 23 context). While actual harm need not be proved to justify an order limiting class

contacts, *Hampton Hardware, Inc. v. Cotter & Co*., 156 F.R.D. 630, 633 (N.D. Tex. 1994), the

movant must at least present evidence that a potential likelihood for serious abuse exists. *Id*.;

*Burrell v. Crown Cent. Petroleum, Inc*., 176 F.R.D. 239, 244 (E.D. Tex. 1997) (Rule 23 context).

An order limiting communications between parties and potential class members should be

based upon "a clear record and specific findings that reflect a weighing of the need for a limitation

and the potential interference with the rights of the parties." *Gulf Oil Co*., 452 U.S. at 101. If a

court decides to limit contact between parties or their counsel and potential class members, it should

issue "a carefully drawn order that limits speech as little as possible, consistent with the rights of

the parties under the circumstances." *Id*. at 102; *Hampton Hardware, Inc*., 156 F.R.D. at 632. In

other words, because of First Amendment concerns, courts must tailor any restrictions they impose

upon a party's ability to communicate with absent class members.  *Belt*, 299 F.Supp.2d at 667.  The court must find that the relief sought would be consistent with the policies of section 216(b) and the Federal Rules of Civil Procedure, giving explicit consideration to the narrowest possible relief which would protect the respective parties.  *Cf. Hoffmann-La Roche*, 493 U.S. at 172-73; *Gulf Oil Co.*, 452 U.S. at 102.

The court in *Belt* set forth a two-part test for determining whether an order limiting a party's speech with absent class members should issue.  First, a court decides whether there is a need for a limitation on speech, and does so by determining whether the party's speech is "misleading, coercive, or an attempt to undermine the collective action."  *Belt*, 299 F.Supp.2d at 668.  If the court concludes that a basis for restricting speech exists, it should then "tailor appropriate injunctions and sanctions in light of First Amendment concerns."  *Id*.

## III.   Analysis

The relief requested by TI is unique, since it seeks the court to restrain communications between Plaintiffs and their counsel and absent class members, even though the court has yet to conditionally certify a class as outlined in *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207 (5th Cir. 1995).[5]  Few courts have addressed how communications initiated by plaintiffs or their counsel to potential class members should be regulated during the interim period after suit has been filed, but before the court conditionally certifies a collective action or authorizes a notification pursuant to section 216(b).[6]  District courts, as part of their managerial responsibility, have "a substantial interest

---

[5]Although, to date, 17 opt-in forms have been submitted to the court, at the present stage of the proceedings, no opt-in class exists.  As Plaintiffs' Motion to Facilitate is pending before Magistrate Judge Ramirez, and will be addressed after this court resolves TI's Application, the court will not address Plaintiffs' Motion to Facilitate at this time.

[6]Courts have been reluctant to address whether parties and their counsel may communicate with potential class members by means other than the court-authorized notification issued pursuant section 216(b).  *See Hoffmann-La Roche Inc.*, 493 U.S. at 170 n.2 ("We do not address any conflicts between court-authorized notice and communications with potential plaintiffs by counsel . . . ."); *Gulf Oil Co.*, 452 U.S. at 102 n.15 ("[W]e do not reach the question of what

in communications that are mailed for single actions involving multiple parties," *Hoffmann-La Roche Inc*., 493 U.S. at 170, and have discretion whether to implement the section 216(b) notice procedure to facilitate a court-authorized notice.  *Id*. at 169.  Since court-authorized notification is discretionary, and potential class members are not included as party plaintiffs in the collective action unless they affirmatively opt-in, courts should not *per se* prohibit precertification communications; however, because such communications manifest "the potential for abuse," and courts have "both the duty and broad authority to exercise control" over collective actions and to "enter appropriate orders governing the conduct of counsel and parties," courts should regulate such communications pursuant to their managerial responsibility.  *Cf. Hoffmann-La Roche Inc*, 493 U.S. at 171; *see also Gates v. Cook*, 234 F.3d 221, 227 (5th Cir. 2000) ("[D]istrict courts enjoy wide latitude in managing complex litigation in general and class actions in particular.").

The court must determine whether the precertification communications at issue warrant the need for a limitation on the speech of Plaintiffs and Plaintiffs' counsel.  TI contends that unless the court grants the injunctive relief it requests, Plaintiffs will continue sending *ex parte* communications to prospective class members, thereby undermining the court-supervised process for determining the composition of the putative class as well as the content of the court-authorized notice.  The court now addresses each communication.

A.      **The Flyer Contained in the Letter Sent by Named Plaintiff Wilford Vogt**

The court determines that the flyer contained in the letter is misleading.  The flyer states, "Use the following formula to calculate the amount of unpaid overtime that you are owed by Texas Instruments."  App. to Def's Br. in Supp. of Mot. for Entry of TRO and Prelim. Inj. ("Def's App.") 4.  It also sets forth a detailed formula for calculating unpaid overtime, and concludes with the

---

requirements the First Amendment may impose in this context.").

**Memorandum Opinion and Order and Preliminary Injunction - Page 7**

statement, in large bold type, "Call today to sign-up."  *Id.*  At the May 18, 2006 hearing, Mr. David

Watsky, one of Plaintiffs' counsel, acknowledged that the flyer was misleading,[7] said that the letter

was sent directly from Vogt without counsel's knowledge, and stated that the flyer would not be

distributed further.  The flyer is the type of communication that the court has the duty and authority

to restrict.  *See Hoffmann-La Roche Inc.*, 493 U.S. at 171; *Belt*, 299 F.Supp.2d at 669.

Having found a basis for restricting dissemination of the flyer, the court now must fashion

a proper remedy.  Although the parties did not characterize the type of speech presented through the

flyer, the flyer, sent by named-Plaintiff Vogt to a current TI employee with the apparent intent for

the employee to opt-in to the action, is a form of commercial speech, since it "is expression related

solely to the economic interests of the speaker and its audience."  *Central Hudson Gas & Elec.*

*Corp. v. Public Serv. Comm'n of N.Y.*, 447 U.S. 557, 561 (1980) (citations omitted); *White Buffalo*

*Ventures, LLC v. University of Tex. at Austin*, 420 F.3d 366, 374 (5th Cir. 2005), *cert. denied*, 126

S.Ct. 1039 (2006).  The Constitution accords a lessor protection to commercial speech than to other

constitutionally guaranteed expression.  *Central Hudson Gas & Elec. Corp.*, 447 U.S. at 563.  "In

general, an order limiting communications regarding ongoing litigation between a class and class

opponents will satisfy first amendment concerns if it is grounded in good cause and issued with a

heightened sensitivity for first amendment concerns."  *Kleiner v. First Nat'l Bank of Atlanta*, 751

F.2d 1193, 1205 (11th Cir. 1985) (citation and internal quotation omitted); *cf. Belt*, 299 F.Supp.2d

at 668; *Hampton Hardware, Inc.*, 156 F.R.D. at 633.  Courts examine four criteria to determine good

cause: "[1] the severity and the likelihood of the perceived harm; [2] the precision with which the

---

[7]The court agrees that the flyer is misleading.  A current or former TI employee who received the flyer could reasonably believe that there has been a judicial determination of liability against TI, or that a settlement has been reached, when, in actuality, neither is true.  In addition, a recipient could reasonably believe that the court has adopted the formula set forth in the flyer as the method for dispersing damages.  Moreover, the statement "Call today to sign-up" is misleading, as a reasonable reader could assume he or she would be "signing-up" to collect damages, instead of signing-up to merely opt-in to the collective action.  *See* Def's App. 4.

order is drawn; [3] the availability of a less onerous alternative; [4] and the duration of the order."
*Kleiner*, 751 F.2d at 1206 (citing *United States Postal Service v. Athena Products, Ltd.*, 654 F.2d
362, 367-68 (5th Cir. Unit B 1981)); *Belt*, 299 F.Supp.2d at 668; *Hampton Hardware, Inc.*, 156
F.R.D. at 633.

Upon review of the flyer, and in light Mr. Watsky's acknowledgment that it is misleading,
the court determines that a complete prohibition of the dissemination of the flyer by Plaintiffs and
Plaintiffs' counsel is necessary.   TI has presented a specific record showing that the flyer is
misleading, and that its continued distribution would result in a real potential for serious abuse.  *See*
*Gulf Oil Co.*, 452 U.S. at 102.   The flyer serves no legitimate purpose other than to mislead, and, as
such, there is no less onerous alternative than to prohibit its distribution in the future.   The
prohibition should be in effect through the time of trial.

Injunctive relief is also warranted under the traditional framework for analyzing preliminary
injunction applications pursuant to Fed. R. Civ. P. 65.   The court agrees with TI that, given the
procedural posture of this action, it may satisfy the first element by showing a substantial likelihood
of success of narrowing the scope of the conditionally certified class.   Although such showing is not
"on the merits," it is a reasonable application of the traditional elements for injunctive relief to
section 216(b).   Upon review of TI's Application, as well as its briefing concerning Plaintiffs'
Motion to Facilitate, and the record as a whole, the court determines that TI has shown that it is
substantially likely to succeed in narrowing the group of persons who will comprise the
conditionally certified class.   Most notably, although Plaintiffs propose a class that includes all
current or former TI employees who are or have been employed as Manufacturing Specialists or
Equipment Engineering Technicians, their briefing indicates that the named Plaintiffs are similarly

situated to some, but apparently not all, Equipment Engineering Technicians.  *See* Pl's Reply to Def's Resp. in Opp. to Mot. to Facilitate at 3; Pl's Resp. to Def's Suppl. App. at 3.

In addition, TI has shown a substantial threat of immediate and irreparable injury, since future distribution of the flyer would prejudice TI and usurp the court's managerial authority to oversee the collective action.  The court also determines that greater injury will result were the court to decline to restrain distribution of the flyer than if it prohibited distribution.  As misleading commercial speech does not merit First Amendment protection, *see Central Hudson Gas & Elec. Corp.*, 447 U.S. at 563, TI's interest in monitoring information provided to potential class members outweighs any interest Plaintiffs may have in distributing the flyer.  Finally, the court determines that enjoining Plaintiffs and their counsel from distributing the flyer in the future promotes rather than disserves the public interest.  The flyer is likely to deceive, instead of inform, potential class members about the lawsuit; therefore the court may prohibit further distribution.  *See id.* Accordingly, the court will grant TI's Application to the extent that TI seeks the court to restrain further distribution of the flyer.

**B.     The e-mail Sent from Opt-in Plaintiff Angela Loggins**

The court now turns to the e-mail sent from opt-in Plaintiff Angela Loggins eleven other persons, presumably current or former TI employees, on February 10, 2006.  The e-mail states in part:

> I have joined a collective action lawsuit against TI for unpaid time.  The lawyers are looking for others to add to the lawsuit.  If you are interested please let me know . . . . If we win - - - and by the way, there is already precedent set in a case that was decided last-year - - - then you will be paid monies owed to you.  Please let me know so I can get the [paperwork] to you and you can return it ASAP.  They have to get it in very soon.

Def's App. 8.  The court determines that the e-mail is misleading.  Of particular concern is the statement, "If we win - - - and by the way, there is already precedent set in a case that was decided last year - - - then you will be paid monies owed to you." *Id*.  The court agrees with TI that a current or former TI employee who reads the e-mail could reasonably believe that the "precedent set in a case that was decided last year" involved a judicial determination of liability against TI in a "collective action lawsuit . . . for unpaid overtime." *Id*.  Although the sentence contains the phrase, "[i]f we win," a current or former employee could reasonably believe that the case precedent implies that victory is certain.  The e-mail has the effect of mischaracterizing the nature of the lawsuit, and although the e-mail is a less egregious communication than the flyer, it is the type of communication that the court has the duty and broad authority to restrict.  *See Hoffmann-La Roche Inc.*, 493 U.S. at 171; *Belt*, 299 F.Supp.2d at 669.

The court determines that a complete prohibition on forwarding the e-mail by Plaintiffs and Plaintiffs' counsel is necessary.  TI has presented a specific record showing that the e-mail is misleading, and that forwarding the e-mail would result in a real potential for serious abuse.  *See Gulf Oil Co.*, 452 U.S. at 102.  The court also determines that there is no less onerous alternative than to prohibit Plaintiffs and their counsel from forwarding the e-mail to additional potential class members.  The prohibition should be in effect through the time of trial.

TI is also entitled to a preliminary injunction enjoining Plaintiffs and their counsel from distributing the e-mail pursuant to Fed. R. Civ. P. 65.  As with the flyer, the court determines that TI has satisfied the first element by showing that it is substantially likely to succeed in narrowing the scope of the conditionally certified class.  TI has also shown a substantial threat of immediate and irreparable injury, since any additional forwarding or dissemination of the e-mail would prejudice TI and usurp the court's managerial authority to oversee the collective action.  In addition,

the court concludes that greater injury will result were the court to decline to restrain Plaintiffs and

their counsel from forwarding the e-mail, than if it prohibited such forwarding.  Since the e-mail is

a piece of misleading commercial speech, it not constitutionally protected, *see Central Hudson Gas*

*& Elec. Corp.*, 447 U.S. at 563, and the court may prohibit its further distribution without interfering

with Plaintiffs' rights.  *Cf. Gulf Oil*, 452 U.S. at 101.  Finally, enjoining Plaintiffs and their counsel

from forwarding the e-mail does not disserve the public interest, since the e-mail is "more likely to

deceive [potential class members] than to inform" them.  *Central Hudson Gas & Elec. Corp.*, 447

U.S. at 563.  Accordingly, the court will grant TI's Application to the extent that TI seeks the court

to restrain Plaintiffs and Plaintiffs' counsel from forwarding the e-mail.

### C.       The May 1, 2006 "Advertisement" Sent by Plaintiffs' Counsel

#### 1.       Determination Whether the "Advertisement" is the Type of Communication that Should be Restricted

The court now turns to the May 1, 2006 advertisement sent to the home addresses of certain

current and former TI employees.  Plaintiffs' counsel modeled the advertisement on the section

216(b) court-authorized notice issued by this court in *Solis v. Hotels.com Texas, Inc.*, 3:03-CV-618-

L, another FLSA collective action.  The advertisement contains three substantive pages, and a fourth

page serving as a "consent to join collective action."  The word "**ADVERTISEMENT**" appears at

the top of the first page in all-capital letters and font that is enlarged, bolded, and underlined.  The

advertisement states that it is "from" "Gillespie, Rozen, Watsky, Motley & Jones, P.C.," the law

firm of Plaintiffs' counsel.  Def's App. 10.  Among other things, the advertisement states:

> The purpose of this Notification is to inform you of the existence of a collective
> action lawsuit in which you are potentially eligible to participate because you may
> be "similarly situated" to the named Plaintiffs.  This Notification is also intended to
> advise you how your rights under the federal Fair Labor Standards Act . . . may be

affected by this lawsuit, and to instruct you on the procedure for participating in this suit, should you decide that it is appropriate and you choose to do so.

During the course of the lawsuit . . . we have discovered that you have been or currently are an employee of Texas Instruments, Inc., and were required to perform certain job functions prior to and after the time that the Company officially clocked you in or out. We received this information from Wilford Vogt and/or Robert Flatt in the form of a roster of employees in the various fabrication plants in Dallas, Texas.

*Id*. It is undisputed that Plaintiffs' counsel mailed the advertisement without obtaining permission from the court, or otherwise noticing the court and TI, but received pre-approval from the State Bar of Texas Advertising Review Committee before mailing it.[8]

TI contends that the advertisement violates *Belt* because Plaintiffs' counsel designed it to resemble a court-authorized notice, and therefore, by its very form, it is misleading, coercive, and undermines the collective action process. TI points out that Plaintiffs filed a Motion to Facilitate in which they acknowledged the rationale and protections afforded by a court-authorized notice, only later to mail the advertisement without obtaining permission from the court, or otherwise noticing the court and TI. Plaintiffs counter that the advertisement is not misleading, coercive, or an improper attempt to undermine the collective action process, and therefore court-ordered limitations are unnecessary. Plaintiffs contend their advertisement is commercial speech that does not warrant court intervention, and in support of their position, cite *Zauderer v. Off. of Disc. Counsel of the Sup. Ct. of Ohio*, 471 U.S. 626, 637 (1985) (holding non-false, non-deceptive, non-misleading advertisements by attorneys are commercial speech). They argue that there is no need for the court

---

[8]Plaintiffs' counsel submitted the advertisement to the Advertising Review Committee, seeking pre-approval pursuant to Texas Disciplinary Rules of Professional Conduct Rule 7.07(d). An exchange of submissions and revisions occurred. The Committee approved the advertisement on March 14, 2006, after it had twice denied pre-approval. *See* Pl's App. 5-6. Rule 7.07(d) permits an attorney to submit a proposed advertisement for "an advance advisory opinion, referred to as a request for pre-approval . . . ." Tex. Disciplinary R. Prof'l Conduct 7.07(d). The pre-approval procedure "is intended as a service to those lawyers who want to resolve any possible doubts about their proposed advertisements' or solicitations' compliance with these Rules before utilizing them. Its use is purely optional." *Id*. comment 4.

**Memorandum Opinion and Order and Preliminary Injunction - Page 13**

to restrict their counsels' ability to send the advertisement to potential class members, and that the court should end the *Belt* inquiry at the first step.  The court agrees with Plaintiffs.

### a.      Misleading

TI contends that the advertisement is misleading because of its form.  It argues that, as Plaintiffs have already sent an advertisement resembling a court-authorized notice, in the event that the court issues a court-authorized notice, many current and former employees will believe that Plaintiffs' advertisement was also court-authorized.

TI also asserts that several substantive portions of the advertisement are misleading. Specifically, it contends that the fifth section of the advertisement, titled "How to Participate in this Lawsuit," contains a misleading sentence.  According to TI, the sentence, "If you choose to join this lawsuit, and thus, participate in any recovery that may result from this lawsuit, **it is extremely important that you read, sign and return the Consent Form**," is misleading because the partially bolded phrase functions as a command that is distinct from the remainder of the sentence.  Def's App. 11.  In addition, TI contends that several statements found in the fourth section, titled "Your Right to Participate in this Suit," are misleading.  The relevant portion of section four states, "You may file a consent form to seek to participate in this lawsuit even if: (a) [y]ou were told by TI that you were not eligible to receive overtime pay; . . . [and] (c) [y]ou signed an agreement to arbitrate claims against TI . . . ."  TI claims these statements are misleading, since Plaintiffs have not alleged that TI informed them they were ineligible for overtime pay, and TI does not contend that any prospective class member signed an agreement to arbitrate a potential claim.

TI also contends that the advertisement is misleading because Plaintiffs' counsel submitted their own proposed notice as an "advertisement" without incorporating TI's proposed revisions.  It

asserts that the advertisement does not contain any of the corrective language that TI submitted in its proposed notice. *See* Def's App. in Supp. of Resp. in Opp. to Pl's Mot. to Facilitate 1. In addition, it contends that the advertisement fails to contain a neutral statement of TI's position concerning Plaintiffs' allegations, such as the statement TI included in its proposed notice. *See id.* at 2. Finally, TI contends that the advertisement is misleading because it does not adequately apprise potential class members of obligations associated with participating in the lawsuit.

Plaintiffs counter that their advertisement resembles a court-authorized notice because their counsel modeled the advertisement on the section 216(b) notice issued by this court issued in *Solis v. Hotels.com Texas*, *Inc.*, 3:03-CV-618-L, in order to eliminate or avert the need for court-ordered limitations. They assert that the similarity in form does not mislead, and that the substantive portions of the advertisement convey truthful information outlining the applicable legal and factual issues in clear, understandable language. Moreover, they point out that Plaintiffs' counsel received pre-approval from the State Bar of Texas Advertising Review Committee before mailing the advertisement, and that the Committee approved the advertisement in its present form, including the partially bolded sentence, and without TI's proposed modifications. In addition, they contend that the document does not give the appearance of a judicial endorsement, since it states that it is "from" "Gillespie, Rozen, Watsky, Motley & Jones, P.C." Finally, Plaintiffs contend that the advertisement is not the kind or degree communication necessitating court intervention, since it seeks to inform potential class members about their legal rights, and differs from communications aimed at discouraging potential plaintiffs from opting-in to the collective action.

The court agrees with Plaintiffs that the May 1, 2006 advertisement is not a communication of the kind or degree to motivate its intervention. Contrary to TI's contentions, the advertisement

**Memorandum Opinion and Order and Preliminary Injunction - Page 15**

is clearly distinguishable from the communication in *Belt*.  In *Belt*, defendant, the employer of the potential class members, unilaterally mailed a letter to absent class members misrepresenting issues in the action by discouraging absent class members from joining the suit.[9]   The defendant mailed the letter after the court had conditionally certified the class and authorized a section 216(b) notice, and did so the day before defendant was to provide plaintiff the names and addresses of the potential class members who were to receive the court-approved notice.  *See Belt*, 299 F.Supp.2d at 666.  In the present case, the court has yet to conditionally certify a collective action or determine the contents of a possible court-authorized section 216(b) notice.  Moreover, the court in *Belt* found the letter to be misleading because it mischaracterized the suit as an attack on the absent class members' status as "professionals" in the workplace, by equating the wage and hour collective action involving a potential class of nurse practitioners and physician's assistants, with a medical malpractice suit.  *See Belt*, 299 F.Supp.2d at 667.  The court in *Belt* also held that the letter was misleading because it mischaracterized the damages available to the putative class as well as the method for deducting attorney's fees.  *See id*.  Such mischaracterizations, or ones of similar type or degree, are not present in the May 1, 2006 advertisement.  As the most that can be said about the May 1, 2006 advertisement is that Plaintiffs, through their counsel, solicited potential class members to opt-in to the collective action, and did so by modeling the advertisement on a previously-approved court-authorized notice, the court determines that there is no need to limit speech based upon allegations that the advertisement is misleading.

---

[9]*See also Hampton Hardware, Inc*., 156 F.R.D. at 633 (holding that letters sent by the defendant employer were misleading because they encouraged potential class members not to join the suit, and stated, among other things, "By not participating in this suit, you will help save your Company expense in dollars and time.").

**Memorandum Opinion and Order and Preliminary Injunction - Page 16**

### b.        Coercive

The court determines that the May 1, 2006 advertisement is not coercive.  A heightened potential for coercion exists where "the class and the class opponent are involved in an ongoing business relationship," such as employer-employee, and the class opponent, usually the defendant who employs the potential class members, sends an *ex parte* communication to potential class members.  *Kleiner*, 751 F.2d at 1202; *Belt*, 299 F.Supp.2d at 668; *Hampton Hardware, Inc.*, 156 F.R.D. at 633.  As the May 1, 2006 advertisement was sent by Plaintiffs' counsel, not from TI, the communication does not present a heightened potential for coercion; nevertheless, the advertisement presents a potential for coercion because it is a communication designed to affect a potential class member's decision whether to opt-in to the lawsuit, and was sent by Plaintiffs' counsel, who, like Plaintiffs, have a pecuniary interest in the litigation.

Although a risk for coercion exists, the advertisement contains relatively little exploitative language, and the court determines that the partially bolded sentence, though manipulative, is not sufficient evidence of coercion to warrant a limitation on speech.  In addition, the advertisement does not prey on possible "fears and concerns" of the potential class members.  *See Belt*, 299 F.Supp.2d at 668.  In fact, the advertisement contains language presumably included to limit the risk of coercion.  For example, the advertisement states, "[t]his Notification is only for the purpose of determining the identity of those persons who wish to be involved in this case and for no other purpose.  Your right to participate in this suit may depend upon a later decision . . . that you and the representative Plaintiffs are actually 'similarly situated.'"  Def's App. 11.  Accordingly, the court, pursuant to its duty and broad authority to control collective actions, determines that there is no need to limit speech based upon allegations that the advertisement is coercive.

### c.     Improper attempt to undermine the collective action

The court now addresses whether the May 1, 2006 advertisement was an attempt to, or did, undermine the purposes of the collective action.  TI contends that Plaintiffs' counsel mailed the advertisement to preempt any adverse ruling the court may issue regarding Plaintiffs' Motion to Facilitate. TI asserts that it has suffered harm in two ways.  First, it claims that Plaintiffs will have multiple opportunities to notice many of the same individuals, since many of the current and former employees who received the advertisement will presumably also receive a court-authorized notice. Second, it claims that counsel sent the advertisement to certain current and former TI employees whom the court will likely find are not similarly situated to the named Plaintiffs, and will therefore be excluded from the conditionally certified class.  The result, according to TI, is an unnecessary stirring up of litigation among persons who may not be eligible to join the collective action.  In support of its assertion that the advertisement undermines the purposes of the collective action, TI presented evidence that at least one current TI employee who is an Equipment Engineering Technician received the advertisement.[10]

Plaintiffs counter that the advertisement promotes the purposes of an FLSA collective action, since their counsel presented truthful information that was not false or deceptive, modeled the advertisement upon a notice previously authorized by this court, and obtained pre-approval of the State Bar of Texas's Advertising Review Committee before mailing the document.  They contend that the advertisement promotes the collective action by making absent class members aware of the

---

[10]TI argues that the court should conditionally certify a class that includes only certain current and former TI employees who are or were employed as Manufacturing Specialists, and that such class should not include current or former employees who are or were employed as Equipment Engineering Technicians, since the named-Plaintiffs are not similarly situated to Equipment Engineering Technicians.  *See* Def's Resp. in Opp. to Pl's Mot. to Facilitate at 7; Def's Reply in Supp. of its Mot. for leave to File Suppl. App. at 5.

lawsuit and informing them of how they might pursue their FLSA rights, and does so without subverting or usurping the court's duty and broad authority to exercise control over the collective action. Moreover, they contend that, since Plaintiffs' counsel sent the advertisement to approximately 295 current and former TI employees, and 129 of the mailings were returned to counsels' office as "undelivered" or "return to sender," the advertisement cannot be said to undermine the collective action, since it has reached only a small number of persons who will likely be included in the conditionally certified class. Finally, Plaintiffs assert that the court should include certain Equipment Engineering Technicians in the conditionally certified class, but contend that even if Equipment Engineering Technicians are not included, TI's evidence that one of the 295 mailings reached an Equipment Engineering Technician does not establish that the advertisement has undermined the collective action.

The court determines that the mailing of the May 1, 2006 advertisement by Plaintiffs' counsel was not an improper attempt to, and did not, undermine the collective action. The timing of the advertisement within the procedural history of this action, unlike the letter in *Belt*, does not evidence a clear intention by the sender to undermine the collective action or subvert the court's managerial responsibility. The defendant in *Belt* sent the letter after the court had conditionally certified the class and "just before the Court's sanctioned notice was to be sent." *Belt*, 299 F.Supp.2d at 666. Since the court has yet to conditionally certify a class or authorize a section 216(b) notice, Plaintiffs' counsel, unlike the defendant in *Belt*, cannot be said to have disregarded or subverted a court directive relating to its administration of the collective action.

In addition, the court has reviewed the record evidence presented by TI, as well as the record in its entirety, and agrees with Plaintiffs that, at this stage, the evidence does not reflect that

the mailing of the advertisement has undermined the collective action.  Defendant has intimated that Plaintiffs' proposed class would include nearly 5,000 individuals.  *See* Def's Resp. in Opp. to Pl's Mot. to Facilitate at 1.  Even if the conditionally certified class is much smaller, however, it is significant that, according to Plaintiffs' counsel, the advertisement has only been mailed to 295 current and former employees, and that 129 of the mailings were returned to counsels' office as "undelivered" or "return to sender."[11]  Furthermore, while evidence does show that at least one Equipment Engineering Technician received the advertisement, the single instance TI has identified is insufficient to support a conclusion that the advertisement has undermined the collective action process, especially since Plaintiffs assert that the court should include certain Equipment Engineering Technicians in the conditionally certified class.  Finally, to date, 17 opt-in forms have been submitted; this number, when compared to the number of advertisements that Plaintiffs' counsel assert have been mailed, suggests that TI's fear about the potential harm caused by the advertisement has gone unrealized.

The court is also mindful of the commercial speech rights of Plaintiffs' counsel, particularly in light of its finding that the representations made in the May 1, 2006 advertisement are not misleading.  "[L]awyer advertising is commercial speech and, as such, is accorded a measure of First Amendment protection . . . . [s]uch protection, of course, is not absolute."  *Florida Bar v. Went For It, Inc.*, 515 U.S. 618, 623 (1995) (citations omitted).[12]  "In assessing the potential for overreaching and undue influence, the mode of communication makes all the difference."  *Shapero v. Kentucky*

---

[11]Mr. David Watsky, a member of Plaintiffs' counsel, provided these numbers in Plaintiffs' briefing and at the May 18, 2006 hearing instead of through affidavit or declaration.  The court accepts the statements of Plaintiffs' counsel as true.  Plaintiffs' counsel is an officer of the court, and there is no reason to question the veracity of this information.

[12]Traditional concerns about the stirring up of litigation remain relevant, as the speech of Plaintiffs' counsel involved the written solicitation of clients through which they might achieve pecuniary gain.  *Cf. Gulf Oil Co.*, 452 U.S. at 101 n.11; *Riojas v. Seal Produce, Inc.*, 82 F.R.D. 613, 618 (S.D. Tex. 1979).

**Memorandum Opinion and Order and Preliminary Injunction - Page 20**

*Bar Ass'n*, 486 U.S. 466, 475 (1988). "[T]argeted, direct-mail solicitation generally . . . poses much less risk of overreaching or undue influence than does in-person solicitation." *Id.* Although the May 1, 2006 advertisement may resemble the form of a court-authorized notice, the top of the document clearly states the word "**ADVERTISEMENT**."   The attorney communication at issue, a direct written solicitation marked "advertisement," is clearly distinguishable from the communications prohibited in *Recinos-Recinos v. Express Forestry, Inc.*, 05-1355, 2006 WL 197030, at * 12 (E.D.La. Jan. 24, 2006).   In *Recinos-Recinos* a representative of defendants traveled to Guatemala and engaged in direct in-person communications with potential class members, who were certain Guatemalan seasonal workers, about the litigation. *See Recinos-Recinos*, 2006 WL 197030, at * 11. The court held that defendants' communications with potential class members undermined the purposes of Rule 23. *Id.* at *12.   The record is devoid of evidence suggesting that Plaintiffs' counsel made in-person solicitations to current or former TI employees.   In light of the timing of the advertisement, the present state of the record, and the commercial speech rights of Plaintiffs' counsel, the court determines that there is no need to limit speech based upon allegations that the advertisement is an attempt to, or does, undermine the collective action.

>    **2.   Tailoring the Appropriate Injunctions and Sanctions in Light of First Amendment Concerns**

Upon conducting the requisite weighing of the need for a limitation on speech and the potential interference with the rights of the parties, and in exercise of its managerial responsibility and broad authority, the court determines that the May 1, 2006 advertisement is not misleading or coercive, and is not an improper attempt to, and does not, undermine the collective action, so as to warrant court intervention.   The type and degree of the *ex parte* communication presented, when compared to the communications examined in other relevant cases, including *Belt*, *Hampton*

*Hardware*, *Inc.*, and *Recinos-Recinos*, indicate that the harm to TI is outweighed by the commercial speech rights of Plaintiffs' counsel, and that the "advertisement" is not the type of communication that the court will use its broad authority to restrict. As the court has determined that there is no need to impose a limitation on speech, the court need not reach the second step of the *Belt* test, and TI's Application will be denied to the extent that TI seeks the court to restrain further distribution of the advertisement.

Likewise, TI is not entitled to a preliminary injunction enjoining Plaintiffs and their counsel from distributing the advertisement under the traditional framework for analyzing preliminary injunction applications. Assuming, without deciding, for purposes of Fed. R. Civ. P. 65, that TI can establish a substantial likelihood of success on the merits and a substantial threat of immediate and irreparable harm, the court determines that TI has failed to demonstrate that greater injury will result from denying its request for the court to enjoin Plaintiffs and Plaintiffs' counsel from sending the May 1, 2006 advertisement to any other past or present TI employees, than from the request being granted. *See Clark v. Pritchard*, 812 F.2d 991, 993 (5th Cir. 1987); *Canal Auth. of State of Fla. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974( *en banc*).

## IV.   **Preliminary Injunction**[13]

For the reasons stated herein, the court **grants in part** and **denies in part** Defendant's Motion for Entry of Temporary Restraining Order and Preliminary Injunction. The court hereby **enjoins and prohibits** Plaintiffs and Plaintiffs' counsel from (1) **mailing** or otherwise distributing, forwarding or disseminating the flyer contained in the letter sent by named Plaintiff Wilford Vogt

---

[13]In issuing this Memorandum Opinion and Order, the court makes no decision concerning the propriety of conditional class certification, or any determination as to the proper composition of the putative class, or the contents of a possible section 216(b) court-authorized notice.

**Memorandum Opinion and Order and Preliminary Injunction - Page 22**

on February 15, 2006, found at App. to Def's Br. in Supp. of Mot. for Entry of TRO and Prelim. Inj.

4, to any current or former employee of Defendant Texas Instruments Incorporated; and (2)

**forwarding, via electronic means**, or otherwise distributing or disseminating the e-mail sent from

opt-in Plaintiff Angela Loggins on February 10, 2006, found at  App. to Def's Br. in Supp. of Mot.

for Entry of TRO and Prelim. Inj. 8, to any current or former employee of Defendant Texas

Instruments Incorporated.

This preliminary injunction **shall remain in effect** until a trial is conducted on the merits,

or until it is otherwise modified by the court.  The court hereby **sets a bond** in the amount of $1,000,

and this preliminary injunction shall not become effective until Defendant Texas Instruments

Incorporated tenders to the clerk of the court the sum of $1,000 cash, or a bond for $1,000 in a form

approved by the clerk of the court, in compliance with Fed. R. Civ. P. 65(c).

In its application, TI also requests the court to enter an order requiring Plaintiffs to:

- provide TI a list of the individuals to whom Plaintiffs' counsel sent the May 1, 2006 "advertisement," as well as any contact information Plaintiffs or their counsel possess for those individuals; and
- return to TI the original, all hard copies, and any disks containing any employee roster or other list identifying TI employees and any of their contact information, as well as destroy all other electronic or digital copies.

Def's Mot. for TRO and Prelim. Inj. at 3.  To the extent that TI requests the court to mandate such

action, this request is essentially a discovery matter and is not an appropriate request for injunctive

relief.   As the court has referred Plaintiffs'  Motion  to Facilitate to Magistrate Judge Ramirez for

hearing, if necessary, and determination, the Magistrate Judge should handle relevant discovery issues, including Plaintiffs' access to applicable contact lists.   All other relief requested by Defendant Texas Instruments Incorporated in Defendant's Motion for Entry of Temporary Restraining Order and Preliminary Injunction is hereby **denied**.

      **It is so ordered** this 8th day of August, 2006.

 

                                       Sam A. Lindsay
                                       United States District Judge